UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | SA-17-CR-293-XR |
| ALEXIS ALVAREZ | § § § | |

## ORDER

The Defendant is charged in this case with conspiracy to possess with intent to distribute marijuana, conspiracy to launder monetary instruments, and conspiracy to engage in monetary transactions in property derived from specified unlawful activity.

Defendant argues in his motion to suppress that the affiant in the applications in support of the search warrants in this case made misleading or false statements. He also argues that the two search warrants executed at his residence were issued without probable cause to believe that any illegal contraband or illegal activities were taking place there.

## BACKGROUND

### A. October 21, 2016 application for search warrant of 18202 Girasole

On October 21, 2016, DEA Special Agent James Phillips made an application for a search warrant of 18202 Girasole in San Antonio, Texas. In his affidavit in support thereof he alleged that the Defendant Alexis Alvarez and others were involved in the distribution of hydroponic marijuana, money laundering and structuring of their cash proceeds. DEA Agent Phillips stated that he had participated in several interviews with a credible and reliable

1

confidential source (CS) about the Defendant's criminal activities. In his affidavit he summarized the interviews as follows:

In a January 2015 interview the CS relayed that in 2010 the Defendant had contracted with a supplier named Yao from California to supply the Defendant with hydroponic marijuana, and that Defendant Alvarez received 30 pounds of hydroponic marijuana from Yao. The CS also relayed that on two other occasions Alvarez paid Yao $60,000 and $150,000 for loads of hydroponic marijuana, but both loads were confiscated by law enforcement officers. During a February 2015 interview the CS relayed that Alvarez had been selling marijuana in the San Antonio area for over 10 years. The CS stated that in 2009 Alvarez moved to Denton, Texas to attend the University of North Texas, and while at UNT Alvarez was selling marijuana to UNT students. The CS relayed that Alvarez had sources of marijuana in Austin and Houston, Texas.

The CS also relayed that in 2012, Ramsey Cadena began receiving marijuana from Alvarez; and that Cadena had received four or five loads of 25 pounds for $3,000 per pound. The CS also relayed that Edmundo Ramirez and Alvarez had several active indoor grow locations within San Antonio and that Brian Bishoffburger was overseeing the indoor grows for the Defendant. The CS also relayed that Ryan Courtney was also supplied marijuana from Defendant Alvarez, and that Courtney was arrested by San Antonio police in 2013 when he was caught in possession of marijuana.

In his affidavit DEA Agent Philips also summarized the various business entities the Defendant was involved in. DEA Agent Phillips indicated that in an August 2015 interview the CS explained that the Defendant was laundering his marijuana proceeds by investing $150,000 into one of the businesses (Soccer City) and receiving monthly payments back from the company

as a salary. The CS relayed that the owner of Soccer City (F. Louie) was aware that the source of Alvarez's investment was from marijuana sales.

In his affidavit DEA Agent Phillips also noted that on November 6, 2013, the Defendant formed another business venture (A.E. Alvarez Investments, LLC). On November 22, 2013, A.E. Alvarez Investments, LLC purchased the residence located at 18202 Girasole. DEA Agent Phillips thereafter summarized how the closing took place using 23 cashier's checks and/or money orders.

In his affidavit DEA Agent Phillips also relayed that during an August 4, 2015 interview the CS relayed that a finance manager at Mercedes Benz of Boerne explained to Alvarez that purchases made using over $10,000 in cash were reported on a Form 8300. DEA Agent Phillips thereafter summarized how the Defendant acquired a Mercedes Benz CL63 in June of 2013 and a C63WS in December 2015.

In addition, DEA Agent Phillips summarizes in his affidavit that his review of various records indicate that no Texas companies have reported paying any wages to Defendant Alvarez from 2008 through October 2016, that in 2011 and 2012 Defendant only reported income of $37,884 and $38,710 as a personal trainer, and that A.E. Alvarez Investments, LLC had not filed any tax returns. DEA Agent Phillips further noted that the Defendant had been previously arrested and charged on three separate occasions with possession of marijuana.

DEA Agent Phillips also indicated in his affidavit that In April 2016, Mark Anthony Rejino was arrested at his residence, which contained 20 pounds of marijuana, cocaine, and $16,000. Rejino informed police officers at the time of his arrest that he had obtained the marijuana from Defendant Alvarez. Frank Zamora was noted as the delivery person. Zamora

3

was one of the individuals who purchased a cashier's check that was used to purchase 18202 Girasole.

DEA Agent Phillips stated in his affidavit that on September 30 and October 4, 2016, surveillance was conducted at 18202 Girasole. A "trash run" done at the property found a bank savings account statement in Defendant's name showing multiple deposits, a partial drug ledger, a manual for a large floor safe, and empty .3ml short-needle syringes.

DEA Agent Phillips alleged that there was probable cause to believe that concealed within the premises were records and controlled substances and other items which were evidence, fruits and instruments of the crimes indicated above. The Magistrate Judge signed the search warrant and it was executed on November 1, 2016.

### B. April 21, 2017 application for search warrant of 18202 Girasole

DEA Agent Phillips applied for a second search warrant for the residence on April 21, 2017. The affidavit in support thereof repeated the same allegations stated above. In addition, DEA Agent Phillips stated that Francisco Zamora was arrested by San Antonio police officers on November 25, 2016. He was in possession of marijuana, drug ledgers, and over $84,000 cash. Zamora told officers that the money was going to be used to purchase a house. DEA Agent Phillips alleged that Zamora was an associate of the Defendant and that the Defendant was scheduled to purchase a home in Austin, Texas the same week that Zamora was arrested. One of the ledger sheets indicated a payment was due to "Alex."

This second affidavit also referenced that on November 1, 2016, the earlier search warrant had been executed at the residence and that numerous evidentiary items were seized from the Defendant, including narcotics. Drug ledgers located in the residence referenced

transactions in excess of $1.9 million.  This second affidavit also referenced how the Defendant was using his parents' address on various transactions, including the purchase of another vehicle, to conceal his true address.  Finally, the affidavit referenced that on April 19, 2017, a federal grand jury had returned an indictment against the Defendant and others with the crimes indicated above.

The Magistrate Judge signed the search warrant and it was executed on April 26, 2017. During the execution of this warrant two cell phones and a laptop computer were seized.

**C.     April 28, 2017 application for search warrant of iPhones and laptop computer**

In his affidavit in support of this warrant, DEA Agent Phillips restated that Rejino was arrested in April 2016 after he was found in possession of marijuana and $16,000 cash and that Rejino told police officers that he had ordered the marijuana from the Defendant.  DEA Agent Phillips restated that Zamora was arrested by SAPD on November 25, 2016 after he was found with marijuana, drug ledgers, and over $84,000 cash, that Zamora was an associate of the Defendant, and that the Defendant was scheduled to purchase a home in Austin that same week of Zamora's arrest.  DEA Agent Phillips also noted that a ledger referenced payments owed to "Alex."

## ANALYSIS

Defendant first argues that it was false that Rejino informed SAPD that he had ordered marijuana from the Defendant.  During the suppression hearing in this case, Rejino denied making any such statement.  The Court finds Rejino's testimony to be not credible.  Rejino at one point in the hearing stated that he did not recognize DEA Agent Phillips and then later states

5

that maybe Phillips was one of the FBI agents that he saw. He initially denied knowing Frank Zamora, but then later claimed that they went to the same gym. He admits to being caught with 20 pounds of marijuana and a gun, but denied telling police anything about Zamora and the Defendant Alvarez. DEA Agent Phillips testified that during his interview with Rejino, he expressed fear about cooperating with the government. SAPD Officer David Rodriguez clearly stated that Rejino told officers that he had obtained his marijuana from Defendant Alvarez.

Second, Defendant argues that DEA Agent Phillips falsely stated that he had moved to Denton in 2009 and sold marijuana to UNT students. The CS stated that in 2009 Alvarez moved to Denton, Texas to attend the University of North Texas, and while at UNT Alvarez was selling marijuana to UNT students. The Defendant, using an affidavit signed by his father, states that he graduated from UNT in the Summer of 2008 and thereafter lived in San Antonio. The fact that the CS provided the wrong years for the Defendant's attendance at UNT (August 2006-August 2008) does not translate to the affiant making a false or misleading statement.

Defendant also claims that the affiant made a misleading statement regarding the drug ledgers found during the execution of the second warrant. In this affidavit, DEA Agent Phillips typed the contents of the ledger pages and titled them: "Collections per Drug Ledger February 12 to November 25, 2016" and "Disbursements per Drug Ledger February 12 to November 25, 2016." In his affidavit, he clearly states: "The summary of the ledgers is shown below:" The affiant made no false or misleading statement.

Defendant also claims that the affidavits failed to substantiate the reliability of the confidential source. The Court disagrees. The affiant stated that he had "numerous interviews with a credible and reliable Confidential Source" regarding the CS's knowledge of the

6

Defendant's criminal activities. The information provided by the CS in this case was verified by the agent's search of the Texas Secretary of State's Office for the various corporate entities referenced above. Further, the CS's statements were verified by an interview of a Financial Manager of Mercedes Benz regarding the purchase of the CLS55. In addition, the CS's statements were corroborated by an investigation into the closing documents and funding for the purchase of the Girasole residence. *See United States v. Sauls*, 192 F. App'x 298, 299 (5th Cir. 2006) (CI's information was supplemented by information supplied by the affiant's own investigation).

Defendant also claims that the second affidavit relied upon stale information. "The information given to a magistrate in an application for a search warrant must be timely and probable cause must be found to exist at the time the warrant issues. The proof must be of facts closely related in time to the issuance of the warrant in order to justify a finding of probable cause at that time. However, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993) (internal citations omitted).

Although the April 28, 2017 affidavit relied upon older information, this second affidavit also referenced new details, e.g. Zamora's November 25, 2016 arrest for possession of marijuana, drug ledgers, and over $84,000 cash. The second affidavit states Zamora told officers that the money was going to be used to purchase a house. DEA Agent Phillips alleged that Zamora was an associate of the Defendant and that the Defendant was scheduled to purchase a home in Austin, Texas the same week that Zamora was arrested. One of the ledger sheets indicated a payment was due to "Alex." This second affidavit also referenced that on November 1, 2016, the earlier search warrant had been executed at the residence and that numerous

evidentiary items were seized from the Defendant, including narcotics. Drug ledgers located in the residence referenced transactions in excess of $1.9 million. Also included in the second affidavit were details regarding the Defendant's April 2017 purchase of another vehicle, where Defendant provided misleading information concerning his place of residence, employment and income. "The amount of delay which will make information stale depends upon the particular facts of each case, including the nature of the criminal activity and the type of evidence sought." *United States v. Freeman*, 685 F.2d 942, 951 (5th Cir. 1982). Further, "the staleness issue must be examined more liberally when a continuing pattern of criminal activity is alleged." *Id.*

"A two-step process is generally used to analyze a district court's decision to grant or deny a motion to suppress based upon the sufficiency of a warrant. First, we decide whether the good faith exception to the exclusionary rule, articulated in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984), is applicable. The good faith exception provides that if reliance on a defective warrant is 'objectively reasonable,' the Fourth Amendment does not require suppression of evidence obtained pursuant to that warrant." *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) (internal citations omitted).

The reliance on the affidavits in this case were objectively reasonable. Accordingly, the *Leon* good-faith exception applies. The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In conducting the good faith inquiry, the court may examine 'all of the circumstances' surrounding the issuance of the warrant. Suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the

exclusionary rule." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (internal citations omitted).

Further, the Court concludes that the affidavits "established probable cause that the evidence to be seized would be found in the place to be searched, justifying issuance of the warrant." *Moore*, 805 F.3d at 593. "Probable cause may be established through "direct observation" or "normal inferences as to where the articles sought would be located." *Id.* In addition to the background information regarding the criminal activities the Defendant was alleged to be conducting, the first affidavit noted that a "trash run" was done at the property which revealed a bank savings account statement in Defendant's name showing multiple deposits, a partial drug ledger, a manual for a large floor safe, and empty .3ml short-needle syringes.

Regarding the Defendant's request for a *Franks* hearing, under the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), "a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017).

In the Fifth Circuit three questions are asked: First, does the affidavit contain a false statement? Second, was the false statement made intentionally or with reckless disregard for the truth? And third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause? All three questions must be met. *Id*.

The defendant must show "by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth." *Ortega*, 854 F.3d at 826. Assuming arguendo that one of the statements was false, the Defendant has failed to show that any misstatement was made intentionally or with reckless disregard for the truth.

## CONCLUSION

Defendant's motion to suppress evidence (Dkt. No. 75) is DENIED. Defendant's motion for a *Franks* hearing is DENIED. *United States v. Arispe*, 328 F. App'x 905, 906 (5th Cir. 2009). Defense counsel suggested at the suppression hearing that he may need various items of discovery produced by the Government. The Court will wait to receive a motion for discovery to be filed before ruling in the event the Government does not agree to a production of these items.

SIGNED this 7th day of May, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE